COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Fulton
Argued by teleconference

COMMONWEALTH OF VIRGINIA

v.    Record No. 0368-21-2

TYEKH CHAMON DAVIS

OPINION BY
JUDGE JUNIUS P. FULTON, III
NOVEMBER 23, 2021

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
D. Eugene Cheek, Judge

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Kevin D. Purnell (Kevin D. Purnell, PLLC, on brief), for appellee.

Pursuant to Code §§ 19.2-124(B) and 19.2-398(B), the Commonwealth appeals the decision of the Circuit Court for the City of Richmond granting Tyekh Chamon Davis bail. The Commonwealth contends that the circuit court abused its discretion in granting Davis a $10,000 bond by giving inappropriate consideration to twenty months of pre-trial delays attributable to Davis. For the reasons stated, we reverse the order of the circuit court.

I.  BACKGROUND

In September 2019, Davis was charged with possession of a firearm after having been convicted of a violent felony. Davis' preliminary hearing was held on October 18, 2019, and he was indicted by a grand jury on December 2, 2019. Between January 2020, shortly after Davis' case reached the circuit court, and February 2021, the circuit court continued Davis' case numerous times on Davis' own motion. [1] On April 30, 2020, the circuit court denied Davis'

---

[1] The continuances began on January 7, 2020, when the court granted Davis' motion for substitution of counsel. In March 2020, the court granted Davis' motion to continue the case to

motion for bail pending trial. After Davis' present counsel was appointed, he moved the court to reconsider its bail decision. The Commonwealth objected to the trial court reconsidering Davis' bail because there had been no allegation of a change of circumstances since the court denied bail in April 2020. The court overruled the Commonwealth's objection, *sub silentio*, and considered Davis' motion on April 7, 2021.

The bail hearing commenced with the circuit court inquiring about the date of offense and confirming that Davis had been in custody since 2019. Defense counsel then provided a brief proffer of the facts underlying the charges against Davis, and proffered that Davis would live with his mother, Ursula Davis, if released. At that point, the court expressed concern that Davis did not have any family members present in court on his behalf or anybody who "could offer support and offer some testimony in terms of . . . [the] presumption" against bail. The court and the defense attorney discussed continuing the bail hearing to allow Davis to present witnesses on his behalf when Davis remarked that his grandmother had recently passed. Davis requested that, if the court was not willing to grant him a bond, that it grant him "a furlough to allow him to attend the funeral" the following Friday.

Eventually, Davis' mother was called to testify telephonically. Ms. Davis testified that she and other family members would "make sure [Davis] is searched when he needs to be searched to make sure he doesn't have a gun." Ms. Davis understood that Davis could neither possess a firearm nor associate with "friends" who "normalize crime, drugs and alcohol." She believed that Davis would "keep the peace and be of good behavior."

_____

April 10, 2020, for a suppression hearing. In September 2020, the court granted Davis' motion to continue the case to October 2020, to retain new counsel. The court appointed new counsel in October 2020, and continued the matter to the November 2020 docket call. In January 2021, the court granted defense counsel's motion to withdraw and continued the matter to February 4, 2021. The court subsequently continued the case to February 12, 2021, and then February 22, 2021, for attorney status hearings. Ultimately, the court appointed Davis' present counsel and continued the case to March 17, 2021, for further proceedings.

The Commonwealth proffered that Davis was a "documented street gang member." In September 2016, while a juvenile, Davis was convicted as an adult of malicious wounding and brandishing a firearm after he "shot a young man in the back five times, resulting in serious, significant and life-threatening injuries." A few months after finishing a two-year active sentence for those convictions, on June 9, 2019, Davis "ran from the police, and appeared to discard a firearm." Later that same day, Davis "posted a video on social media showing himself with a handgun on his bed, and a caption that read, 'You-all will never catch me with shit.'" In the seven months preceding his arrest in this case, Davis posted "numerous" images on social media of himself with firearms, some with extended magazines, and offering firearms for sale. The Commonwealth further proffered the facts underlying the instant charge against Davis: on August 31, 2019, Davis was a backseat passenger in a car that was stopped by police for reckless driving. Upon request, the driver granted police permission to search the car. Davis refused to exit the car, so police removed him and patted him down for weapons. Police ultimately recovered a firearm from Davis' pants. Davis admitted to buying what he assumed was a stolen gun.

After argument by counsel, the court stated that it was "not prepared now, at this time, to give [Davis] a bond," but inquired of the sheriff's deputy whether it could "furlough [Davis] to go to" his grandmother's funeral that Friday. The circuit court further expressed concern over Davis' "gun mentality." The court then asked how long Davis had been incarcerated. When Davis responded that he had been incarcerated for twenty months, the court immediately stated that it would grant Davis "a bond with strict conditions," finding that he already had been incarcerated for "a long time." After "balancing" Davis' length of incarceration against the Commonwealth's arguments, the court concluded, "he's almost been locked up, this particular

time, longer than he has before.  So that's a long period of time, and so I'm going to allow him to have a bond."

## II.  ANALYSIS

### A.  Standard of Review

"This Court reviews a trial court's decision whether to grant bail for abuse of discretion." Commonwealth v. Duse, 295 Va. 1, 7 (2018) (citing Fisher v. Commonwealth, 236 Va. 403, 411 (1988)).  This standard requires the Court to "show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance."  Commonwealth v. Thomas, 73 Va. App. 121, 127 (2021) (quoting Lawlor v. Commonwealth, 285 Va. 187, 212 (2013)).  A trial court abuses its discretion by (1) failing "to consider a relevant fact that should have been given significant weight," (2) giving "significant weight to an irrelevant or improper factor," or (3) committing "a clear error in judgment" when weighing "all proper factors."  Duse, 295 Va. at 7 (quoting Lawlor, 285 Va. at 212).

### B.  Whether the Circuit Court Erred in Failing to Articulate a Basis for its Bail Decision or State Whether the Presumption Against Bail had been Overcome

It is well-established that "questions essential to all bail decisions" are "whether the defendant will appear for hearing . . . and whether the defendant's liberty will constitute an unreasonable danger to himself and the public."  Dowell v. Commonwealth, 6 Va. App. 225, 229 (1988) (citing Chambers v. Mississippi, 405 U.S. 1205, 1206 (1972)); see also Code § 19.2-120.[2] Therefore, evidence is relevant to a bail determination only to the extent that it is probative of

---

[2] The applicable version of Code § 19.2-120 took effect on July 1, 2020.  See 2020 Va. Acts ch. 999.  Since Davis was granted bond on April 7, 2021, Code § 19.2-120 has been significantly amended to abrogate any presumptions against bond.  See 2021 Va. Acts ch. 337, 1st Spec. Sess.  All subsequent references to Code § 19.2-120 are to the version of the statute in effect on April 7, 2021, the date of the order at issue.

"whether the defendant will appear at further proceedings when required to do so and whether [he] represents an unreasonable danger to himself and the public." Id.

A criminal defendant "shall be admitted to bail" while awaiting trial unless the court finds probable cause that "[h]e will not appear for trial . . . as directed" or "[h]is liberty will constitute an unreasonable danger to himself or the public." Code § 19.2-120(A). However, there shall be a rebuttable presumption against bail under certain circumstances, including, as here, where the defendant is charged with a violation of Code § 18.2-308.2, "which relates to a firearm and provides for a mandatory minimum sentence." Code § 19.2-120(B)(4). When a defendant is charged with an offense giving rise to a rebuttable presumption against bail, the court must:

> consider the following factors and such others as it deems appropriate in determining, for the purpose of rebuttal of the presumption against bail . . . , whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of the public:
>
> 1. The nature and circumstances of the offense charged;
>
> 2. The history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, membership in a criminal street gang . . . , and record concerning appearance at court proceedings; and
>
> 3. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Code § 19.2-120(E).

A court making a bail determination "has a duty to articulate the basis of its ruling sufficiently to enable a reviewing court to make an objective determination that the court below has not abused its discretion." Shannon v. Commonwealth, 289 Va. 203, 206 (2015). This rule allows for "prompt and meaningful review of bail decisions." Id. Moreover, "when the

presumption against bail applies, . . . it is not sufficient that an appellate court presume the presumption was rebutted simply by virtue of the fact that a circuit court admitted a defendant to pre-trial bail." Thomas, 73 Va. App. at 129.

When granting Davis bond, the circuit court stated: "Well, I'm balancing him being incarcerated for 20 months, and balancing the other things that you are saying, and balancing that." Upon review of the record, the circuit court failed to articulate any conclusion regarding whether Davis had rebutted the presumption against bail, let alone a basis for such a conclusion, if reached. This Court cannot divine the basis for the circuit court's decision to grant a bond from its mere claim that it is "balancing" various reasons and cannot, therefore, "determine from the circuit court's ruling what, if any, consideration or weight . . . [was] given to the statutory presumption against bail." Shannon, 289 Va. at 207. As such, we hold that the circuit court has erred both in failing to articulate the reasons for its ruling and in failing to state whether the presumption against bail has been rebutted.

C. Whether the Circuit Court Erred in Giving Inappropriate Weight to the Length of Davis' Pre-Trial Incarceration

Our analysis does not conclude with our finding that the circuit court erred in failing to articulate the basis for its ruling. Turning next, as we must, "to the record made in the circuit court to ascertain whether the conclusion the circuit court reached had factual support," id., we find that the record does not reflect that the circuit court weighed all of the factors under Code § 19.2-120(E) and that the circuit court erred by granting inappropriate weight to the pre-trial delays caused exclusively by Davis.

The record reflects, and Davis' counsel conceded during oral argument, that the extensive delays in trying Davis' case were entirely the result of Davis' own motions. There is no evidence to suggest that his case was continued due to the COVID-19 pandemic, or because the Commonwealth was not prepared. Cf. United States v. Kin-Hong, 83 F.3d 523, 525 (4th Cir.

- 6 -

1996) (noting that there was a presumption against bail in extradition cases and only "special circumstances" justify release on bail, such as where "the [government was] not ready to proceed" (citing United States ex rel. McNamara v. Henkel, 46 F.2d 84, 84 (S.D.N.Y 1912))); Territory v. McFarlane, 1 Mart. (o.s.) 216, 217 (Orleans 1811) ("In case of a mistrial or of a continuance, at the instance of the territory, as the confinement may be extended to a considerable length, there would be no impropriety in listening to a motion for bail."). Indeed, the Commonwealth's unchallenged proffer at the bail hearing established that it had long been prepared to try the case. It likewise is clear that the circuit court gave considerable weight to the length of Davis' pre-trial incarceration, dramatically swinging from "not prepared . . . to give him a bond," to "I'm going to give him a bond," immediately after learning that Davis had been in custody for twenty months.

Although the factors listed in Code § 19.2-120(E) are non-exhaustive, and courts can consider "such other[ factors] as it deems appropriate," it is clear that the length of Davis' pre-trial incarceration, protracted due to his own motions, is not relevant to whether he will appear for trial or whether "[h]is liberty will constitute an unreasonable danger to himself or the public." Code § 19.2-120. While there may be cases in which the particular facts make the length of pre-trial incarceration an appropriate consideration for bail determination, under these circumstances, we conclude that the passage of time awaiting trial was an improper factor to which the circuit court gave significant weight in determining whether to grant Davis' motion for bail.

Without making any factual findings that Davis "had borne his burden of persuasion that he was neither a flight risk nor a danger to the public," Thomas, 73 Va. App. at 131, the record suggests that the circuit court may have granted Davis a bond solely based upon the conclusion that he had been in jail "a long time." Because the record does not reflect that the circuit court

weighed all of the Code § 19.2-120(E) factors, and because the court gave improper weight to the length of pre-trial incarceration, we reverse its order granting Davis pre-trial bail.

## III.  CONCLUSION

For the foregoing reasons, we reverse the circuit court's April 7, 2021 order granting a $10,000 pre-trial bond for Tyekh Davis, and the case is remanded with direction that the order of that court granting bail be vacated.

<u>Reversed and remanded.</u>